**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUSSELL NIEMEYER,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-09 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **KENNETH CAMERON, et al.,** | ) | |
| **Respondents.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II.    REPORT[1]

### A.    Relevant Background

Petitioner, Russell Niemeyer, is a state prisoner who is currently serving a judgment of sentence imposed in 2005 by the Court of Common Pleas of Erie County on convictions of Aggravated Indecent Assault; Endangering the Welfare of a Child; Indecent Assault (vaginal contact); and Indecent Assault (penile contact). David G. Ridge, Esquire, and Timothy J. George, Esquire, represented Petitioner at his trial. The Honorable Ernest J. DiSantis, Jr., presided over the trial and he summarized the evidence introduced as follows:

> [Petitioner] was charged with sexually abusing his oldest daughter, A.N. (born May 4, 1990), on numerous occasions from 1997 to 1999 when she was aged seven through nine.

---

[1]      Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which will be cited to as "CP Dkt. No. ___." They also have provided the Court with copies of the briefs that the parties filed with the Superior Court of Pennsylvania.

After a four-day jury trial ending March 18, 2005, [Petitioner] was found guilty of Count 1, Aggravated Indecent Assault, 18 Pa.C.S.A. § 3125(7); Count 2, Endangering the Welfare of a Child, 18 Pa.C.S.A. § 4304(A); Count 3, Indecent Assault (vaginal contact), 18 Pa.C.S.A. § 3126(A)(7); and Count 5, Indecent Assault (penile contact) and found not guilty [of] Count 4, Indecent Assault (chest contact).

The victim; the victim's mother, Lori Niemeyer; and Dr. Justine Schober testified for the Commonwealth.

[Petitioner] committed these episodes of abuse almost daily except when A.N.'s mother did not work, on the weekends and/or during the summer. The molestation lasted a half-hour and ended when [Petitioner] fell asleep.

During each incident, [Petitioner] routinely placed his fingers in or around her vagina. A.N. recalled the vivid details [of the abuse during her trial testimony].

- - -

[Petitioner] told A.N. "not to tell my mom and that she wouldn't understand." A.N. did not immediately tell her mother because she feared that her mother "wouldn't believe … [her], and she would ask him [Petitioner], and then he would deny it, and then she'd go to work, and then I'd [A.N] get in trouble. [Petitioner's] history of reoccurring outbursts, temper and/or violence supported her fear. During the trial, A.N. described six different incidents of psychological and/or physical abuse.[4]

> [4] They are: (1) [Petitioner] punched her when she was eight because the Ford Focus would not start; (2) [Petitioner] threw A.N. and her sisters in a puddle when their wooden bed "broke;" (3) [Petitioner] hit A.N. after she tried wearing sweat pants to school (he later tore them in half); (4) [Petitioner] punched and spanked A.N. and threw her radio out the back door when he found her listening to it; (5) [Petitioner] punched A.N. when she was five each time she failed to tie her shoes; and (6) [Petitioner] spanked A.N. until she was black and blue after she cut her hair "really short." [Petitioner] denied the allegations.
>
> A.N. also remembered violence against her mother: (1) "seeing bruises and stuff;" (2) seeing [Petitioner] hit her at least once; (3) hearing [Petitioner] choke her; and (4) [Petitioner] pulling the phone wires out of the wall when she tried calling the police. Lastly, [Petitioner] threatened to shoot himself if her and the children left.

A.N. revealed the sexual abuse on Friday, August 15, 2003 when she was 13. This was after [Petitioner] and his ex-wife, Lori Niemeyer, separated (later divorced). Ms. Niemeyer was awarded custody of the children.

In the weeks prior to the victim's disclosure, [Petitioner] and his ex-wife exchanged a number of angry phone calls about her impending move to her boyfriend's (Shawn Kent) parents' home. [Petitioner] vehemently opposed the move. During a call that occurred on August 15, 2003, A.N. recognized [Petitioner's] voice as he shouted at her mother. [Petitioner] stated that Lori Niemeyer and Shawn Kent "smoke coke or whatever, and that they molest us [all three daughters] and stuff."

Hearing [Petitioner's] remarks, A.N. questioned her mother about molestation. After hearing her mother's explanation, A.N. "started shaking, … turned white, and … goes, 'Mom, I got to tell you something.'" As a result, the victim's mother called the Erie County Office of Children & Youth (OCY) and obtained a Protection From Abuse Order (PFA) against [Petitioner].

Dr. Justine Schober examined A.N. on October 20, 2003. She conducted a direct genital examination, which lasted five to ten minutes. Dr. Schober found that A.N. "had a transection of the hymen, which was through the full thickness of the hymen at the nine o'clock position on the hymenal rim." She stated the transection was about five millimeters in width and caused by insertion of an unknown object.

[Petitioner] introduced testimony from ten witnesses.[8] His defense was that: (1) the assaults never occurred; (2) A.N. was a happy, upbeat child who adored him; and (3) A.N. fabricated the events at her mother's behest.[9]

> [8] The defense witnesses were Laura Koman, [Petitioner's] future sister-in-law; Rebecca Niemeyer, [Petitioner's] niece; David Weaver, [Petitioner's] nephew; Richard E. Niemeyer, II, [Petitioner's] nephew; Carol Thompson, A.N.'s elementary school art teacher; Donna Bessetti, A.N.'s elementary school bus driver; Roger Niemeyer, Sr., [Petitioner's] father; Charlotte Niemeyer, [Petitioner's] mother; Joseph Kimmy, [Petitioner's] friend; and [Petitioner].

> [9] Lori Koman, the fiancé of Roger Niemeyer, Jr., [Petitioner's] brother, stated that on one occasion during "the summer of 2003, … two to three weeks before school started," A.N. "was real quiet." Normally, she was very talkative, but on that day "she was … just different." Ms. Koman asked A.N. "if there was something wrong and, if there was, she [A.N.] could talk to me." A.N. responded: "My mom wants me to say bad things about my dad." A.N. denied making any such statement.

On June 28, 2005, [Petitioner] was sentenced to a period of incarceration of 30 to 60 months on Count 1, a consecutive sentence of 6 to 24 months on Count 2 and concurrent sentences of 6 to 24 months on Counts 3 and 5.

(CP Dkt. No. 36, <u>Commonwealth v. Niemeyer</u>, No. 266 of 2004, slip op. at 1-6 (CP Erie, Sept. 15, 2005) (additional footnotes and record citations omitted)).

Petitioner, through his counsel (Ridge and George), filed an appeal with the Superior Court in which he raised the following four claims:

1. "Whether the lower court erred in admitting without limitation evidence of uncharged prior bad acts against the [Petitioner]?"[2] (Brief for Appellant in <u>Commonwealth v. Niemeyer</u>, 1211 WDA 2005, at 5, 36-40 (Pa.Super. Sept. 22, 2005)).

2. "Whether reversible error occurred when the trial court prohibited the introduction of prior consistent statements to rehabilitate the testimony of a critical witness whose credibility was attacked?" (<u>Id.</u> at 5, 18-23). This "critical witness" was Laura Koman, who was, according to Petitioner, "the most important witness called by the defense," because she testified that A.N. had told her that "my mom wants me to say that my dad abused Niki and I." According to Petitioner, Koman's testimony "fully supported the specific defense that [he] sought to put forth …. [T]he credibility of Koman was therefore a fundamental issue for both sides. [Petitioner] assigns error to the trial court's refusal to allow defense counsel to rehabilitate Ms. Koman through the use of a prior consistent statement when her credibility was called into question by the Commonwealth. The prior consistent statement would have been offered through the testimony of Roger Niemeyer, who was Ms. Koman's fiancé and [Petitioner's] brother. Mr. Niemeyer would [have] testif[ed] that Ms. Koman told him what A.N. confessed to her." (<u>Id.</u> at 18-19).

3. "Whether the statement of the victim's mother describ[ing] herself as a 'psycho bitch from hell' should have been introduced where her motives were a key issue?" (<u>Id.</u> at 5, 30-35).

4. "Whether reversible error occurred when the defense was prohibited from introducing a 'state of mind' statement to show the motive of a key individual involved in the allegations brought against [Petitioner]?" (<u>Id.</u> at 5). Petitioner took the stand in his own defense and he was prepared to testify that Lori Niemeyer's boyfriend, Shawn Kent, had said to him: "I took your family. What do you think about that?" The Commonwealth objected on the basis of hearsay, and the trial court sustained the objection. Petitioner argued that, given its pre-allegations timing, Kent's remark was admissible as evidence of "a plan in place to remove Petitioner from the lives of the ex-wife and her boyfriend, even if it

---

[2] The evidence of Petitioner's prior bad acts was summarized by Judge DiSantis in footnote four of his 1925(b) Opinion, which is recited above.

meant bringing sexual abuse charges against him."  According to Petitioner, the evidence was admissible under the state-of-mind exception to the hearsay rule set forth in Pa.R.E. 803(3).  Therefore, he contended, the trial court erred in excluding this evidence, which would have created an inference that Petitioner was the victim of a conspiracy between his ex-wife and her boyfriend to remove him from his daughter's lives.  (Id. at 24-27).

On June 21, 2006, the Superior Court issued an 18-page Memorandum in which it affirmed Petitioner's judgment of sentence.  (CP Dkt. No. 39, Commonwealth v. Niemeyer, 1211 WDA 2005 (Pa.Super. June 21, 2006)).  It denied his claims on the merits.  (Id. at 3-18).  Petitioner, through counsel, filed an application for reargument, which the Superior Court denied.  On March 14, 2008, the Pennsylvania Supreme Court denied a petition for allowance of appeal.  (CP Dkt. No. 38).

On November 3, 2008, Petitioner, through new counsel (who also is representing him in this federal habeas case), filed a motion for collateral relief in the Court of Common Pleas pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 et seq., and an accompanying 25-page brief.  (CP Dkt. No. 40).  He raised the following three claims for relief:

1.   "Was Petitioner denied his right to Due Process under the Fourteenth Amendment of the U.S. Constitution when the trial court precluded Petitioner from developing evidence of A.N. and Lori's motivation to lie; were appellate counsel ineffective … for failing to raise and preserve this claim for appeal?"

2.   "Was Petitioner denied his rights under the Sixth Amendment to the United States Constitution and Article 1 § 9 of the Pennsylvania Constitution to effective assistance of counsel in that trial counsel failed to call an expert witness to testify concerning false reporting in child sexual abuse cases?"

3.   "Was Petitioner denied his Fourteenth Amendment right to due process in that the prosecutor was permitted by the Court to make impermissible and prejudicial argument to the jury during closing that was based upon her opinion and not evidence or record; did the trial court fail to give a proper curative instruction and appellate counsel were ineffective for failing to preserve this claim for appeal?"

(Id. at 5).

5

On December 9, 2008, the PCRA Court denied Petitioner's motion. (See CP Dkt. No. 41, Commonwealth v. Niemeyer, No. 266 of 2004, slip op. (CP Erie Nov. 18, 2008); CP Dkt. No. 42). Petitioner, through counsel, filed an appeal with the Superior Court. On July 14, 2009, the Superior Court issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 45, Commonwealth v. R.J.N., 2090 WDA 2008, slip op. (Pa.Super. July 14, 2009)). It denied Petitioner's first claim as "previously litigated," pursuant to 42 Pa.C.S. § 9543(a)(3). (Id. at 3-5). The Superior Court denied Petitioner's second claim "because [he] has failed to develop this bald assertion of ineffectiveness by citing to any persuasive authority, [therefore] we decline to address this issue on the merits." (Id. at 5, citing Commonwealth v. Long, 532 A.2d 853, 857 (Pa.Super. 1987), which cited Pa.R.A.P. 2119(a)). The Superior Court denied Petitioner third ground for relief on the merits. (Id. at 6-8).

In the present action, Petitioner, through counsel, raises the following seven claims:

Claim I          The trial court violation his Fourteenth Amendment right to due process of law and based its ruling upon an unreasonable determination of the facts when it permitted *carte blanch* admission of evidence of uncharged prior bad acts of his without either assessing the reliability of such claims or balancing their highly prejudicial impact;

Claim II         The trial court violated his constitutional right to a fair trial when it improperly prohibited Petitioner from testifying concerning Shawn Kent's statement that he had "taken" Petitioner's family;

Claim III        The trial court denied his Fourteenth Amendment right to due process of law and based its ruling upon an unreasonable determination of the facts when it did not permit Petitioner to call Roger Niemeyer to testify in order to corroborate the prior consistent testimony of Ms. Koman after the Commonwealth challenged it as a recent fabrication;

Claim IV         The trial court erred in not permitting Petitioner to cross examine his ex-wife, Lori Niemeyer, as to her admission that she considered herself a "psycho bitch from hell" and the state courts denied Petitioner his constitutional right to due process and a fair appeal of the claim;

6

| | |
|---|---|
| Claim V | He was denied his right to Due Process under the Fourteenth Amendment of the U.S. Constitution when the trial court precluded Petitioner from developing evidence of A.N. and Lori's motivation to lie; appellate counsel was ineffective under the Sixth Amendment for failing to raise and preserve this claim for appeal; |
| Claim VI | He was denied his rights under the Sixth Amendment to effective assistance of counsel, in that trial counsel failed to call an expert witness to testify concerning false reporting; |
| Claim VII | He was denied his Fourteenth Amendment right to due process in that the prosecutor was permitted by the Court to make impermissible and prejudicial argument to the jury during closing that was not based upon evidence of record; the trial court failed to give a proper curative instruction and appellate counsel were ineffective for failing to preserve this claim for appeal. |

(ECF No. 1; see also ECF No. 2, *Memorandum of Law In Support of Petitioner's Habeas Corpus Petition*).  Claims 1 through 4 coincide with the claims of trial court error that Petitioner raised in his direct appeal, although now he contends that the alleged errors are of constitutional dimension.  Claims 5 through 7 are the same claims that he raised during the PCRA proceeding.

Respondents have filed their Answer (ECF No. 20), the Common Pleas Court's file, and the appellate briefs.  They contend that several of Petitioner's claims are procedurally defaulted, and that none of his claims have merit.

**B.     Discussion**

**(1)     Standard Of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  Under this statute, habeas relief is only available on the grounds that Petitioner's convictions were obtained in violation of his federal constitutional rights.

28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

In describing the role of federal habeas proceedings, the U.S. Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
> > (1) resulted in a decision that was *contrary to,*[3] *or involved an unreasonable application of,*[4] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[3] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*

(Emphasis added).

Thus, AEDPA circumscribes a federal court's review of a state prisoner's federal constitutional claim when the state court has adjudicated that claim on the merits. Importantly, review under § 2254(d) is limited to the record that was before the state court. <u>Cullen v. Pinholster</u>, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011). <u>See</u> also <u>Brown v. Wenerowicz</u>, 663 F.3d 619, 628-29 (3d Cir. 2011); <u>Roundtree v. Balicki</u>, 640 F.3d 530, 538 (3d Cir. 2011).

"[F]or the purposes of [§] 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." <u>Thomas v. Horn</u>, 570 F.3d 105, 117 (3d Cir. 2009). When the state court has not adjudicated a claim on the merits, AEDPA's standard of review at § 2254(d) does not apply and the federal habeas court's review is *de novo*. <u>Id.</u> at 124.[5]

---

[4]    "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" <u>Lambert</u>, 387 F.3d at 234, quoting <u>Williams</u>, 529 U.S. at 407.

[5]    Regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all of the state court's *factual findings* are correct unless the presumption is rebutted by clear and convincing evidence. <u>See</u> <u>Palmer v. Hendricks</u>, 592 F.3d 386, 392 (3d Cir. 2010), citing 28 U.S.C. § 2254(e)(1).

**(2)      Claims I, II, III, and IV Are Procedurally Defaulted Because Petitioner Failed to Exhaust Them**

Respondents contend that Claims I, II, III, and IV should be denied as procedurally defaulted because, when Petitioner challenged the trial court's alleged errors at issue in each of these claims in his direct appeal, the issues he raised were framed entirely as errors of state law and not – as they are here – as violations of the Due Process Clause.  Therefore, Respondents assert, Petitioner failed to exhaust the federal constitutional claims that he now raises before this Court in Claims I through IV and he thus has procedurally defaulted those claims for the purposes of federal habeas review.  Petitioner does not contest Respondents' contention that his claims are procedurally defaulted.  For that reason, and for the reasons set forth below, the Court should deny Claims I through IV as procedurally defaulted.

**(a)      The Exhaustion Requirement**

The U.S. Court of Appeals for the Third Circuit has explained, "[i]t is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts."  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), citing 28 U.S.C. § 2254(b)(1)(A).  Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  The petitioner carries the burden of proving exhaustion of all available state remedies.  See, e.g., Lambert, 134 F.3d at 513.

This exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."  Coleman v. Thompson, 501 U.S. 722, 731 (1991).  See also O'Sullivan, 526 U.S at 842-49.  The requirement is:

principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848. To "fairly present" a claim for exhaustion purposes, "a petitioner must have presented a federal claim's factual and legal substance to the state courts *in a manner that puts them on notice that a federal claim is being asserted*," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (emphasis added), so that they had "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982), quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971). See also Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-99 (3d Cir. 2007). "It is not sufficient that all the facts necessary to support the federal claim were before the state courts." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). A mere "passing reference to a 'fair trial'" is insufficient to put the state court on notice that petitioner is asserting a federal constitutional claim. Id. at 415. "If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners

are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66

(1995) (per curiam). Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the

Fourteenth Amendment, he must say so, not only in federal court, but in state court." Id. at 366. See

also Baldwin, 541 U.S. at 32 ("ordinarily a state prisoner does not 'fairly present' a claim to a state court

if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the

presence of a federal claim in order to find material, such as a lower court opinion, that does so.").

Petitioner has not demonstrated that, when he litigated on direct appeal the alleged trial court

errors at issue in Claims I, II, III, and IV, that he raised errors under the Due Process Clause or any other

provision of the federal constitution.[6] Therefore, he has not satisfied his burden of establishing that he

exhausted the federal constitutional claims that he now raises before this Court in those claims.

---

[6]      Respondents do point out that when Petitioner raised on direct appeal the allegation at issue in Claim III (that the trial court erred when it did not permit him to call Roger Niemeyer to testify in order to corroborate Lori Koman's testimony that A.N. had told her that her mother wanted her to say that Petitioner had abused her and her sister), he did "at the very end of his argument" cite to Chambers v. Mississippi, 410 U.S. 284 (1973). (ECF No. 20 at 10; see also Brief For Appellant in Niemeyer, 1211 WDA 2005 at 22). However, as Respondents explain, "[P]etitioner spen[t] no time developing the argument independent of the state evidentiary rule claim." The Superior Court's decision supports Respondents' argument, as it reviewed the claim at issue as one alleging only an error of the state rules of evidence. (CP Dkt. No. 39, Niemeyer, 1211 WDA 2005, slip op. at 9-13).

Respondents argue that because Petitioner "never fairly presented [the underlying trial court error at issue in Claim III] as a federal due process claim to the state court," Claim III "should be considered procedurally defaulted." (ECF No. 20 at 11-12). Petitioner does not contest Respondents' assertion. In fact, in his brief before this Court, Petitioner frames the issue in Claim III as one of state law error. Although he contends, in rote fashion, that the Superior Court's rejection of Claim III was an unreasonable application of "federal law clearly established by the Supreme Court," he has not directed this Court to a single case to support the argument that the trial court's decision that the defense could not call Roger Niemeyer in order to rehabilitate Lori Koman's testimony implicated his federal constitutional rights (he does not even cite to Chambers v. Mississippi). (See ECF No. 2 at 14-17).

For all of these reasons, the Court concludes that Petitioner failed to fairly present to the Superior Court a claim that the trial court violated his federal due process rights when it precluded the defense from introducing Roger Niemeyer's testimony. However, even if the Court were to assume for the sake of argument that he did, he still would not be entitled to relief. The harmless error evaluation applicable to such a claim is that which is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), which requires that in order to grant habeas relief a federal habeas court must find that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637, quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). See also Fry v. Pliler, 551 U.S. 112 (2007). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quotation marks omitted); Bond v. Beard, 539 F.3d 256, 276 (3d Cir. 2008). This Court is not in grave doubt that the trial court's decision to preclude the defense from presenting Roger Niemeyer's testimony had a "substantial and injurious effect or influence" on the jury's

Although, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines, 208 F.3d at 164.

Here, requiring Petitioner to return to state court to attempt to litigate his unexhausted claims would be "futile" because he is foreclosed from doing so under Pennsylvania law. The PCRA expressly limits the availability of relief and requires, with few exceptions not applicable here, that a post-conviction petition be filed within one year of the date a judgment becomes final. 42 Pa.C.S. § 9545(b)(1). Since more than one year has passed since Petitioner's judgment of sentence became final, any PCRA motion that he might now attempt to file would be untimely and non-reviewable in the Pennsylvania courts. Additionally, if he returned to state court to attempt to litigate the claims at issue in another PCRA motion, the state court likely would determine that he waived the claims. See 42 Pa.C.S. § 9544(b).

### (b)     The Procedural Default Doctrine

A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review. See, e.g., Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars

---

verdicts, and therefore any error was harmless under Brecht. For this reason, in addition to the reasons discussed above, Claim III should be denied.

federal habeas review of a claim whenever the petitioner has failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). In relevant part, the doctrine essentially provides that federal claims may not be addressed by the federal habeas court if the petitioner either: (a) failed to present a claim to the state court and the state court would now decline to address it on the merits because state procedural rules bar such consideration; or (b) failed to comply with a state procedural rule when he presented a claim to the state court, and for that reason the state court declined to address the federal claim on the merits. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69. Claim I through IV fall within the former provision.

Based upon all of the forgoing, Petitioner failed to exhaust Claims I, II, III, and IV and therefore those claims must be denied as procedurally defaulted.[7]

### (3)     Claim V

Petitioner raises two federal constitutional issues in Claim V. First, he argues that his due process rights were denied when the trial court precluded the defense from eliciting certain testimony at trial. Petitioner described the testimony at issue in his Brief:

> [T]rial counsel wished to inquire about a conversation on August 13 – two days before the allegations of abuse were first made … wherein Lori told Petitioner's mother "You can't believe what your son has done. You're not going to see your grandkids anymore."

---

[7]     A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750. See also Maples v. Thomas, — U.S. — , 2012 WL 125438, *10 (Jan. 18, 2012); Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner does not argue that he can overcome his default under the "cause" and "actual prejudice" requirements.

Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to Petitioner's case.

(N.T. 3/17/05, pg. 71).  The Court ruled that this conversation was collateral and inadmissible.  The Court stated:  "… as I said before, I'm not litigating the custody issue and the nitty-gritty of the hatred they had for one another."  (N.T. 3/17/05, pg. 72).

Later, during Petitioner's testimony when his counsel asked him about the family court's having to intervene in the very heated custody battle because the parties could not agree on virtually anything, the Court again sustained the Commonwealth's objection and disallowed the testimony.  (N.T. 3/17/05, pg. 115-116).  Trial counsel attempted to admit the custody orders themselves into evidence, which the Court also did not permit.  (N.T. 3/16/05, pg. 198).

Second, Petitioner argues that Ridge and George were ineffective in their role as direct appeal counsel for failing to raise this due process claim with the Superior Court.

In reviewing Claim V in the PCRA appeal, the Superior Court rejected the due process claim as "previously litigated."  Under the PCRA, a petitioner cannot obtain review on the merits unless he can show that an "allegation of error has not been previously litigated or waived."  42 Pa.C.S. § 9543(a)(3).  In relevant part, an allegation is "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of *the issue*[.]"  42 Pa.C.S. § 9544(a)(2) (emphasis added).

The Superior Court explained that Petitioner was in actuality raising the same "issue" that he had raised in direct appeal – that is, that the trial court had erred when it would not permit the defense to introduce certain evidence to support his contention that his ex-wife had so much animosity towards him that she pressured A.N. to lie about the abuse.[8]  According to the Superior Court:

[Petitioner] attempts to couch his issue of the exclusion of evidence relating to his defense that his daughter had a motivation to lie in terms of two different theories, *i.e.*, a

---

[8]      As noted above, Petitioner claimed in his direct appeal that the trial court erred when it would not permit the defense to introduce certain evidence (Shawn Kent's statement to Petitioner that he "took" his family) in order to demonstrate the hostility between Petitioner and his ex-wife and her motive to induce A.N. to lie about the molestation.  The Superior Court on direct appeal held that any error on the part of the trial court was harmless because the defense was able to introduce other evidence to support his contention that "Lori Niemeyer and Mr. Kent wanted to exclude [Petitioner] from the lives of his daughters, thereby suggesting to the jury that the allegations were fabricated for that very purpose."  (CP Dkt. No. 39, Niemeyer, 1211 WDA 2005, slip op. at 17-18).

15

Due Process violation and an ineffectiveness of counsel claims. Our Supreme Court has addressed this distinction as follows:

> There is nothing in [42 Pa.C.S.A. §9544(a)(2)] defining "issue." That term, as used in "pleading and practice," is understood to mean "a single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other." BLACK'S LAW DICTIONARY, 6th ed. 831. Thus, "issue" refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief. See, e.g., Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 148 (1963) (defining "grounds" as "a sufficient legal basis for granting the relief sought by the applicant"). **The theories or allegations in support of the ground are simply a subset of the issue presented. Stated another way, there can be many theories or allegations in support of a single issue**, but ultimately, § 9544(a)(2) refers to the discrete legal ground raised and decided on direct review. **Thus, at the most basic level, this section prevents the relitigation of the same legal ground under alternative theories or allegations.** See, e.g., Commonwealth v. Wilson, 452 Pa. 376, 305 A.2d 9 (1973) (concluding that a new theory in support of the same claim of trial counsel ineffectiveness was unavailing since the claim was decided adversely to petitioner in his previous direct appeal); Commonwealth v. Slavik, 449 Pa. 424, 297 A.2d 920 (1972) ("A defendant is not entitled to relitigate the validity of his plea every time he offers a new theory or argument which he had not previously advanced.").

[Commonwealth v. Derk, 913 A.3d 875, 882 (Pa.Super. 2006)] (citation omitted).

Accordingly, as the issue of whether evidence was admissible to establish a motivation to lie about the sexual abuse charges was previously litigated on direct appeal to this Court, [Petitioner] is not entitled to relief on this claim. See [CP Dkt. No. 36, Commonwealth v. Niemeyer, No. 266 of 2004, slip op. (CP Erie, Sept. 15, 2005)]; see also 42 Pa.C.S. § 9543(a)(3) ["To be eligible for [PCRA relief]... the petitioner must plead and prove by a preponderance of the evidence ... [t]hat the allegation of error has not been previously litigated or waived."].

(Id. at 4-5 (highlighted text in original)).

Respondents contend that, based upon the Superior Court's decision, Claim V is procedurally defaulted. (ECF No. 20 at 13). Petitioner does not contest that assertion.

Even if this Court were to hold that Claim V was not procedurally defaulted and reviewed it *de novo*, Petitioner still would not be entitled to habeas relief. He has not shown how the two alleged

trial court errors that he identifies in his Brief amounted to a violation of his due process rights.  See

Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) ("errors of state law cannot be repackaged as

federal errors simply by citing the Due Process Clause.").  Moreover, even if he had demonstrated that

his due process rights were implicated – and he has not – any error would be harmless in light of the

other evidence introduced at his trial regarding the discord between Petitioner and his ex-wife (which is

discussed below).  Brecht, 507 U.S. at 637.

Petitioner also has not shown that Ridge and George were ineffective for failing to raise the two

alleged trial court errors that Petitioner identifies in the Brief he filed with this Court.  Ineffective

assistance claims are analyzed under the familiar two-part test set forth in Strickland v. Washington, 466

U.S. 668 (1984).[9]  Under Strickland, Petitioner first must show that his counsel's representation fell

below an objective standard of reasonableness.  466 U.S. at 688; see also Williams, 529 U.S. at 390-91.

The law presumes that his counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable.
> A fair assessment of attorney performance requires that every effort be made to eliminate
> the distorting effects of hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a  court must indulge a
> strong presumption that counsel's conduct falls within the wide range of reasonable
> professional assistance; that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted).  It is "only the rare claim of ineffective assistance

of counsel that should succeed under the properly deferential standard to be applied in scrutinizing

---

[9]     The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the
effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of
ineffective assistance of appellate counsel are evaluated under the Strickland standard.  Lewis v. Johnson, 359 F.3d 646, 656
(3d Cir. 2004).

counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997), quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989).

<u>Strickland</u> also requires Petitioner to demonstrate that he was prejudiced by his counsel's alleged deficient performance.[10]  This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." <u>Id.</u> at 694.  As the Third Circuit Court recently explained:

> He "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" <u>Jacobs v. Horn</u>, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94).  On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Harrington</u>, 131 S.Ct. at 787 (citing <u>Strickland</u>, 466 U.S. at 693).  Counsel's errors must be "so serious as to deprive the defendant of a fair trial." <u>Id.</u> at 787-88 (citing <u>Strickland</u>, 466 U.S. at 687). *The likelihood of a different result must be substantial, not just conceivable*. <u>Id.</u>

<u>Brown</u>, 663 F.3d at 630 (emphasis added).  When a petitioner is contending that his appellate counsel was ineffective, he must show that there is a reasonable probability that, but for counsel's alleged ineffectiveness, the Superior Court would have reversed his judgment of sentence. <u>See</u> <u>United States v. Mannino</u>, 212 F.3d 835, 844 (3d Cir. 2000).

Petitioner has not demonstrated that, even if his counsel had raised on direct appeal the two alleged trial court errors that he identifies in his Brief to this Court, that there is a reasonable probability that the Superior Court would have reversed his judgment of sentence.  As the Superior Court observed in considering a related claim on direct appeal, the trial counsel permitted the defense to introduce other evidence regarding the discord between Petitioner and his ex-wife, and Petitioner has not demonstrated that the evidence at issue would not have been merely cumulative:

---

[10]     The Court in <u>Strickland</u> also noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697.  Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, this course should be followed. <u>Id.</u>

[Petitioner] was able to raise an inference through other evidence that Lori Niemeyer and Mr. Kent wanted to exclude [Petitioner] from the lives of his daughters, thereby suggesting to the jury that the allegations were fabricated for that very purpose. That other evidence included testimony about (1) the acrimonious custody dispute; (2) Laura Koman's testimony that A.N. claimed her mother wanted A.N. to say that [Petitioner] had sexually abused her and her sister; (3) Lori Niemeyer's plans to move with the girls to Mr. Kent's parents' home; (4) hearted arguments over the phone between [Petitioner] and his ex-wife concerning the move; and (5) Lori Niemeyer's phone call to her mother-in-law regarding what her "son has done now."

(CP Dkt. No. 39, <u>Niemeyer</u>, 1211 WDA 2005, slip op. at 18). In addition, as Respondents point out in their Answer:

[One of Petitioner's claims is that the] trial court precluded testimony regarding a conversation between Lori and the mother-in-law … Charlotte Niemeyer … from testifying that Lori told her two days before the allegations became public that "You can't believe what your son has done. You're not going to see your grandkids anymore." There was no due process violation here, contrary to [P]etitioner's assertions, the trial court did not preclude Charlotte from testifying as to the time of the call and what was said during the conversation. Charlotte did testify that Lori and her did have a telephone conversation of August 13, 2003. Charlotte testified that Lori stated "You know what your son did now," "you'll find out soon" and "you'll never see the girls again.["] … [T]he substance and the inference from the testimony was exactly what counsel wanted, evidence to infer that Lori had thought out and planned to eliminate petitioner from her and her daughters' lives by fabricating the allegations.

(ECF No. 20 at 14).

Based upon all of the foregoing, Claim V should be denied.

### (4)    Claim VI

In his next claim, Petitioner contends that his trial counsel were ineffective for failing to call an expert to testify concerning the false reporting of molestation charges in the context of domestic relations and divorce disputes, or at the very least for failing to consult such an expert. He alleges that if trial counsel had done the appropriate investigation, they "would have easily found *numerous* well known and respected experts" who could have testified "on Petitioner's behalf at trial to establish a

credible, scientific basis for holding that the allegations were unreliable and false, thereby exonerating [him]."  (ECF No. 2 at 25 (emphasis in original)).

In denying this claim, the PCRA Court held:

Petitioner's argument that trial counsel was ineffective for not calling an expert witness concerning veracity of accusations in child abuse case is, on its face, meritless.  This type of testimony constitutes an invasion of the jury's exclusive role to determine the credibility of witnesses.  Expert testimony on credibility issues has been long-held to be inadmissible in this Commonwealth.  See, Commonwealth v. Dunkle, 602 A.2d 830, 837 (Pa. 1992); Commonwealth v. Seese, 517 A.2d 920 (Pa. 1986); Commonwealth v. Davis, 541 A.2d 315, 837 (Pa. 1988).  Therefore, trial counsel cannot be found ineffective for not having attempted to present this type of evidence.

(CP Dkt. No. 41, Niemeyer, No. 266 of 2004, slip op. at 5-6).

Petitioner did not challenge this portion of the PCRA Court's decision in his appeal to the Superior Court.  (See CP Dkt. No. 45, R.J.N., 2090 WDA 2008 at 5 ("We noted that [Petitioner's] second issue is not a challenge to the PCRA court's finding that expert testimony on credibility issues is inadmissible.").  Accordingly, he did not fully exhaust that portion of Claim VI, O'Sullivan, 526 U.S. at 843, and as a result it is procedurally defaulted.  However, even if this Court could review it on the merits, it would be denied because the PCRA Court held that Petitioner's trial counsel would not have been permitted to call an expert witness to testify regarding credibility issues because such testimony is inadmissible under state law.  This Court has no authority to review that state law decision.  See, e.g., Estelle, 502 U.S. at 67-68.

The only remaining portion of Claim VI is Petitioner's contention that his trial counsel were ineffective for failing to *consult* with an expert concerning false reporting of sexual abuse claims to aid him in the development of defense cross-examination questions.  The Superior Court declined to review this claim on the merits because Petitioner "failed to develop this bald assertion of ineffectiveness by

citing to any persuasive authority[.]" (CP Dkt. No. 45, R.J.N., 2090 WDA 2008, slip op. at 5, citing Commonwealth v. Long, 532 A.2d 853, 857 (Pa.Super. 1997), which cited Pa.R.A.P. 2119(a)).

Respondents contend that Petitioner has procedurally defaulted this portion of Claim VI. He does not contest their assertion. Accordingly, this claim should be denied on that basis.

Respondents argue in the alternative that even if this Court could consider this claim on the merits, it should be denied. This Court agrees. It is Petitioner's burden to show that his trial counsel was ineffective for failing to consult an expert, such as Arnold T. Shienvold, for advice on how to best present the defense that the allegations against him were false. He has not overcome Strickland's presumption that his counsel were effective, 466 U.S. at 688-89, nor has he met his burden of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." Id. at 694. See also Brown, 663 F.3d at 630.

### (5)    Claim VII

In his final claim, Petitioner contends that the prosecutor violated his due process rights by making "highly prejudicial statements based solely on her personal opinion and not based upon evidence of record" during her closing argument, and that the trial court failed to give the appropriate cautionary instruction. (ECF No. 2 at 30). In support of this claim, Petitioner relies upon the instance when the prosecutor told the jury:

> [Petitioner] molested his daughter nearly every day for two years and they [Petitioner's attorneys] expect her to remember that it happened once on the day of the picnic. She was seven years old. So what if she can't pinpoint the exact date. *I would think it odd if she could … I'd think that was a little odd*.

(3/17/05 Trial Tr. at 192). Petitioner's counsel objected on the basis that the prosecutor was giving her personal opinion, and the court immediately told the jury: "it is permissible for the attorneys to suggest

to you their positions based upon the evidence that has been introduced. So I'll just give you that instruction and leave it at that." (Id. at 193). The Court also had previously instructed the jury that: "The closing arguments of counsel are not evidence, but nonetheless, they're an important part of the case because the attorneys get to argue to you during the course of their closings the facts and the law as they will suggest it supports their position." (Id. at 157).

As further support for this claim, Petitioner cites to the instance when the prosecutor told the jury "what she thought was important concerning Donna Bessetti's testimony." (ECF No. 2 at 31, citing 3/17/05 Trial Tr. at 203).[11] He also takes issue with the prosecutor's comment that Petitioner did not protect A.N. and that "he never cared for her." (Id., citing 3/17/05, Trial Tr. at 213).

In evaluating a petitioner's claim that a prosecutor committed misconduct during closing argument, the Third Circuit Court has explained:

> The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be ';of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976))). See also Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992) (our review of a prosecutor's conduct in a state trial in a federal habeas proceeding is limited to determining whether the prosecutor's conduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting Greer, 483 U.S. at 765,

---

[11]    The prosecutor stated:

> The only thing I thought was really important about Donna Bessetti's testimony – and it's up to you whether or not you think this was important … [Attorney Ridge] kept referring to it as the Rusty Niemeyer residence. If that doesn't show the kind of control Rusty Niemeyer had, I don't know what did, because, back in these days when these two knew him, they were all living together. It was the Niemeyer residence, not the Rusty Niemeyer residence.

(3/17/05 Trial Tr. at 203).

22

107 S.Ct. 3102)). This determination will, at times, require us to draw a fine line-distinguishing between ordinary trial error on one hand, and "'that sort of egregious misconduct which amounts to a denial of constitutional due process'" on the other hand. Ramseur, 983 F.2d at 1239 (quoting United States ex rel. Perry v. Mulligan, 544 F.2d 674, 678 (3d Cir. 1976)).

In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, we are required to examine those remarks in the context of the whole trial. Ramseur, 983 F.2d at 1239 (citing Greer, 483 U.S. at 766, 107 S.Ct. 3102). The remarks must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights. Greer, 483 U.S. at 766, 107 S.Ct. 3102 (citing Donnelly v. DeChristoforo, 416 U.S. at 639, 94 S.Ct. 1868).

Werts, 228 F.3d at 197-98.

Because Petitioner first raised the alleged due process violation at issue here on collateral review, he was required to couch it within the claim that his appellate counsel were ineffective for failing to present it as a ground for relief on direct review. Accordingly, he was required to prove to the state court in the PCRA proceeding that there was a reasonable probability that, but for Ridge and George's alleged ineffectiveness, the Superior Court would have reversed his judgment of sentence. See Mannino, 212 F.3d at 844.

The Superior Court rejected this claim on the merits. It held:

Our standard of review for a claim of prosecutorial misconduct is as follows[:]

> The primary guide in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to have an objective weighing of the evidence and impede the rendering of a true verdict. In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility, Canon 7, E.D. 7-19-7-39, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury.

[Commonwealth v. Chmiel, 777 A.2d 459, 464 (Pa.Super. 2001) (citations omitted]. Further, it is well settled that a prosecutor is not permitted to express a personal belief as to the defendant's guilt or innocence or as to the defendant's or other witness' credibility. Commonwealth v. Correa, 664 A.2d 607, 611 (Pa.Super. 1995) (citations omitted).

The Commonwealth, however, "is free to argue that the evidence leads to guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." Commonwealth v. Stafford, 749 A.2d 489, 499 (Pa.Super. 2000) (citing Commonwealth v. Sam, 535 Pa. 350, 635 A.2d 603, 608 (1993)). The testimony indicates that the prosecutor was not expressing [her] personal belief regarding [Petitioner's] guilt but rather [she] was "urging the jury to make a fair inference from the facts adduced at trial." Stafford, 749 A.2d at 499; see also Commonwealth v. Gunderman, 407 A.2d 870, 873 (Pa.Super. 1979) (prosecutor may argue that evidence proves defendant guilty as charged). Because the prosecutor's statements were permissible, we find that they did not serve to prejudice the jury or impede the rending of a true verdict. Chmiel, 777 A.2d at 464.

Additionally, as the prosecutor's statements were proper, a cautionary instruction was not required. However, upon objection by [Petitioner's] attorney, the trial court provided the jury with a cautionary instruction advising them that "it is permissible for the attorneys to suggest to [the jury] their positions based upon the evidence that has been introduced." See N.T., 3/17/05, at 193. As the prosecutor's statements were proper, and the trial court provided a cautionary instruction responding to objection from [Petitioner's] counsel, we find [Petitioner's] final claim to be without merit. Consequently, we find no ineffectiveness of trial counsel for failing to preserve a meritless claim. Commonwealth v. Gaerttner, 649 A.2d 139, 143 (Pa.Super. 1994) (counsel cannot be found ineffective for failing to pursue meritless claim.) Accordingly, [Petitioner's] final argument fails.

(CP Dkt. No. 45, R.J.N., 2090 WDA 2008, slip op. at 7-8).

Because the Superior Court adjudicated this claim on the merits, this Court's analysis of it is governed by AEDPA's standard of review at 28 U.S.C. § 2254(d). Accordingly, this Court has the authority to issue the writ of habeas corpus only if Petitioner demonstrates that Superior Court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The U.S. Supreme Court recently stressed the "highly deferential" review that this Court must accord the state court's decision:

We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). The Court also has recently elaborated:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Petitioner has failed to meet his burden.  He has not shown that the Superior Court applied incorrect U.S. Supreme Court precedent, that the Superior Court's resolution of his ineffective assistance of appellate counsel or his underlying due process claim were unreasonable applications of U.S. Supreme Court precedent, or that its decision was based upon an unreasonable determination of the facts in light of the evidence presented before the state court.

Accordingly, this Court should deny Claim VII.


**C.    Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied.  Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to do so will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  January 23, 2012

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

27